# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brian Farrington, an Individual,                    Civil No. 09-1838 (DWF/JSM)

        Plaintiff,

v.                                                             **MEMORANDUM**
                                                               **OPINION AND ORDER**

City of St. Paul, a municipal corporation
in Minnesota; Officer Jason Neubrand,
individually and in his official capacity;
Officer Steven Todd Smith, individually and
in his official capacity; Officer Nicole Sipes,
individually and in her official capacity;
Officer James Storey, individually and in his
official capacity; Sgt. James Falkowski,
individually and in his official capacity;
and Does 1 through 5, inclusive, individually
and in their official capacity; and St. Paul City
Attorney's Office,

        Defendants.

_____

Jill Clark, Esq., Jill Clark P.A., counsel for Plaintiff.

Lawrence J. Hayes, Jr., Office of the City Attorney, counsel for Defendants.
_____

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by

Defendants the City of St. Paul (the "City"), Officer Jason Neubrand, Officer Steven

Todd Smith, Officer Nicole Sipes, Officer James Storey, Sgt. James Falkowski, and the

St. Paul City Attorney's Office (collectively, "Defendants").  In his First Amended

Complaint, Plaintiff Brian Farrington brings a claim under 42 U.S.C. § 1983 for excessive

force, violation of substantive due process, violation of due process, and violation of

equal protection.[1]  For the reasons set forth below, Defendants' motion is granted in part

and denied in part.

**BACKGROUND**[2]

On or about June 25, 2006, Plaintiff Brian Farrington attended a party at an

apartment in St. Paul that was thrown by his former roommates.  Officer Smith and

another squad responded to a 911 call from the party.  Police dispatch indicated that there

was a loud party with two males seen physically and verbally fighting.  (Aff. of

Lawrence J. Hayes, Jr. ("Hayes Aff.") ¶ 4, Ex. 3 (Dep. of Steven Smith ("Smith Dep."))

at 54.)  Farrington knew the police had been called and waited in the street for them to

arrive.  Officer Smith arrived and, because of the large size of the crowd, called for

additional police officers.  (*Id*. at 63.)  Farrington greeted Officer Smith and asked, "What

seems to be the problem officer?"  (Hayes Aff. ¶ 3, Ex. 2.)  Officer Smith responded,

---

[1]    In his First Amended Complaint, Plaintiff Brian Farrington asserts a cause of
action for malicious prosecution and claims under 42 U.S.C. § 1983 based on allegations
of a cover-up and lack of neutral investigation against all defendants.  Farrington has
agreed to the dismissal of these claims.  In addition, while Farrington asserts several
theories under 42 U.S.C. § 1983, Farrington focuses on his excessive force claim.

[2]    Many facts are disputed.  Unless specifically noted, the Court sets forth the facts in
the light most favorable to Farrington.  *See Gosney v. Reliable Life Ins. Co*., 293 F.3d
1052, 1053 (8th Cir. 2002).

"What do you think the problem is?" and asked if the apartment was Farrington's.  (*Id.*)

Farrington explained that his name was on the lease but that he no longer lived in the

apartment.  (*Id.*)  Officer Smith described Farrington as looking disheveled.  (Smith Dep.

at 72.)

Farrington and one of his former roommates again approached Officer Smith, who

had been joined by Officer Sipes.  Farrington was chewing tobacco and spit at least two

times on the ground in the presence of the officers.  (Hayes Aff. Ex. 2, ¶ 1.)  Defendants

assert that Farrington spit on the sidewalk and Farrington asserts that he spit on the street.

Officer Smith claims that he advised Farrington that he was violating a City ordinance by

spitting and that he should not spit again.  (Smith Dep. at 73.)  Farrington asserts that

Officer Smith actually said, "You do that one more fucking time, I'm taking you out."

(Farrington Dep. at 127.)  Farrington "raised his empty palms" and asked, "What are you

talking about? . . . All I did was spit."  (Hayes Aff. Ex. 2, *Id.* ¶ 1.)  Officer Smith asserts

that Farrington spit a third time, but Farrington denies spitting again after Officer Smith

warned him not to do so.  Shortly thereafter, Officer Smith escorted Farrington to the

squad car, removed the contents of Farrington's pockets, and placed him in the back seat

without handcuffing him.  (*Id.* ¶ 1.)  Farrington was told that he was being detained, not

arrested.  (*Id.*)

Officer Smith returned to the squad car and discovered that Farrington had

something in his hand.  (Smith Dep. at 115.)  Specifically, Officer Smith noticed that

Farrington was holding the object up to the left side of his head and that his hand was

"kind of moving around." (*Id.* at 117-18.)  Officer Smith asserts that he did not know

what the object was or whether it was a cell phone, a weapon, or a weaponized cell

phone. (*Id.* at 121.)  Farrington was actually talking on a cell phone.  Officer Smith

opened the passenger side back door and "yanked" the phone that was in Farrington's

hand.  (Hayes Aff. Ex. 2, ¶ 2.)  Farrington responded "What the hell?" and pulled himself

backwards as he grabbed the phone with both hands.  (*Id.*)[3]  Officer Smith asserts that

Farrington grabbed his arm and pulled him into the back of the squad car.  (Smith Dep. at

133.)  Farrington asserts that as Officer Smith grabbed the cell phone, Officer Smith

"almost instantly" struck Farrington in the head with a flashlight.  (Farrington Dep. at

146.)  Farrington asserts that Officer Smith hit him at least twice in the area of his left

temple and above his left eye with his flashlight and then continued to hit him with his

fist on the left side of his head and face several additional times.  (Hayes Aff. Ex. 2, ¶ 2;

Farrington Dep. at 142-155.)  According to Farrington, he told Officer Smith to "Get the

fuck off me, I just had brain surgery . . . Get off of me, get off of me you are going to

fucking kill me."[4]  (*Id.*)  Officer Smith testified that he punched Farrington about five

times, but that he did so because Farrington pulled him into the squad car and that

---

[3]      In his deposition testimony, Farrington asserts that he only "attempted" to grab the
phone with both hands, but that he did not actually grab the cell phone with both hands.
(Farrington Dep. at 150, 152.)

[4]      In April 2007, Farrington was involved in an unrelated incident during which he
claims he was assaulted and suffered a head injury.  (Farrington Dep. at 96-99.)

Farrington was punching him and reaching for his utility belt. (*Id*. at 134.) Farrington

denies that he was resisting.

Officer Sipes was on the other side of the squad car when Officer Smith attempted

to retrieve the cell phone from Farrington. She testified at her deposition that she saw

Officer Smith reach into the car and witnessed the following:

> I saw Mr. Farrington back up and then all of a sudden I could see Officer
> Smith coming down on top of him and Officer Smith had a very shocked
> look and I could see that Mr. Farrington had a hold of him and he was being
> pulled down into the back seat.

(Hayes Aff. ¶ 7, Ex. 6 (Dep. of Nicole Sipes ("Sipes Dep.")) at 65.) Officer Sipes also

saw Officer Smith punch Farrington and heard Officer Smith tell Plaintiff that if

Farrington didn't stop, he would "spray him." (*Id*. at 73, 82.)

Officer James Storey was also on the scene and observed what he believed to be

fighting going on in the back of the squad car. (Hayes Aff. ¶ 8, Ex. 7 (Dep. of James

Storey ("Storey Dep.")) at 14-15.) In particular, he observed that the squad car was

moving from side to side, Officer Smith was in the back seat, and that Officer Smith's

feet were hanging out. (*Id*. at 14.) Officer Storey opened the passenger side car door and

heard Officer Smith tell Farrington to stop resisting and to put his hands behind his back.

(*Id*. at 20.) Officer Storey reached in and grabbed Farrington's arms so that he could be

handcuffed. (*Id*. at 21-22.)[5]

---

[5]     Officer Neubrand was also called to the scene, but asserts that he was there for a
very short time. (Hayes Aff. ¶ 9, Ex. 8 (Dep. of Jason Neubrand ("Neubrand Dep.")) at

(Footnote Continued on Next Page)

Officer Smith ticketed Farrington for spitting on the sidewalk and obstruction of legal process, and released him to his friends.  (Farrington Dep. at 172-73.)  Officer Smith offered to take Farrington to the emergency room, but Farrington declined.  (*Id*. at 171.) A friend brought Farrington to the emergency room.

While in the emergency room, Farrington called police dispatch indicating that he wanted to make a complaint about a St. Paul police officer.  Sergeant Falkowski was the watch commander and received a call from police dispatch.  Dispatch indicated that somebody at a hospital wanted to make an assault report against the St. Paul Police Department.  (Hayes Aff. ¶ 12, Ex. 11 (Dep. of Sgt. James Falkowski ("Falkowski Dep.")) at 22-25.)  Sergeant Falkowski spoke with Farrington.  Farrington told Sergeant Falkowski that he had been struck by Officer Smith, that he was in the emergency room, and that he wanted Sergeant Falkowski to come to the hospital to take his statement. Sergeant Falkowski did not go to the emergency room, but he called Officer Smith, told Officer Smith to write a detailed report, and advised Farrington of a phone number at which he could file a complaint with Internal Affairs.  (*Id*. at 33, 45, 56.)

Farrington alleges that he suffered head injuries, including a concussion and soft tissue swelling over the left temporal region, as a result of the force used by Officer Smith.

---

(Footnote Continued From Previous Page)
38.)  Farrington asserts that time reports indicate that Officer Neubrand was there long enough to witness the incident inside the squad car.

## DISCUSSION

### I.   Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### II.   Excessive Force Claim—Officer Smith

Farrington asserts that Officer Smith used excessive force during the incident on

7

June 25, 2006.  Officer Smith contends that he is protected by qualified immunity.

The doctrine of qualified immunity protects state actors from civil liability when "'their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  *Sexton v. Martin*, 210 F.3d 905, 909 (8th Cir.

2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Farrington can

overcome the defense of qualified immunity by showing that:  "(1) the facts, viewed in

the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or

statutory right; and (2) the right was clearly established at the time of the deprivation."

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quotation marks omitted).

Farrington asserts that Officer Smith used excessive force when he struck

Farrington in the head while Farrington was being detained in the back of the police

squad car.  The right to be free from excessive force is clearly established under the

Fourth Amendment's prohibition of unreasonable seizures of the person.  *Graham v.

Connor*, 490 U.S. 386, 394-95 (1989).  The Court evaluates excessive force claims under

an objective-reasonableness test.  *Id*. at 397.  In determining whether the use of force is

"reasonable" under the Fourth Amendment, a court must balance "the nature and quality

of the intrusion on the individual's Fourth Amendment interests" against the

government's interests at stake.  *Id*. at 396 (citation omitted).  The reasonableness of the

use of force must be judged from the "perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight."  *See id*.  The reasonableness determination

also must make allowances for the fact that police officers make split-second judgments

8

in oftentimes tense situations. *Id*. at 396-97. Therefore, the United States Supreme Court

has set out the reasonableness inquiry as one that requires courts to determine "whether

the officers' actions are 'objectively reasonable' in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation." *Id*. at 397

(citing *Scott v. United States,* 436 U.S. 128, 137-39 (1978)).

Courts also consider the result of the force in analyzing a claim for excessive

force. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003). Assuming

without deciding that a plaintiff must demonstrate some minimum level of injury, the

Eighth Circuit has ruled that the necessary level of injury required for a Fourth

Amendment excessive force claim is "actual injury." *Lambert v. City of Dumas*, 187 F.3d

931, 936 (8th Cir. 1999); *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995). The

Eighth Circuit has held that the following examples constitute "actual injury":

(1) "bruises and a facial laceration"; (2) "bruised knees and elevated blood pressure";

(3) "posttraumatic stress disorder"; or (4) a "single small cut of the lateral right eyelid and

small scrapes of the right posterior knee and upper calf." *Lambert*, 187 F.3d at 936

(citations omitted).

Here, Officer Smith was called to investigate a party that involved a fight.

Farrington approached Officer Smith, who asserts that Farrington looked disheveled and

then spit several times in the vicinity of the responding officers. Officer Smith detained

Farrington and placed him in the back of the squad car. Officer Smith then discovered

Farrington talking on a cell phone. Officer Smith claims that he was concerned that the

cell phone could be a dangerous weapon and reached into the car to remove it.  Officer

Smith admits that he struck Farrington five times, but claims that he was pulled into the

backseat and thought he was under attack.  Farrington acknowledges that he grabbed, or

attempted to grab, the phone with both hands, but otherwise denies that he resisted or

attacked Officer Smith.

The evidence before the Court demonstrates that Farrington suffered a mild

concussion and soft tissue swelling to the left side of his head as a result of the encounter

with Officer Smith.  In addition, there are several material factual disputes that, if

resolved in favor of Farrington, could lead to a finding of excessive force on the part of

Officer Smith.  In particular, Farrington asserts that he did not spit on the sidewalk and

therefore did not violate the city ordinance that allegedly supported, at least in part, his

detention in the back of the police car.  In addition, Farrington denies that he pulled

Officer Smith into the back of the car or otherwise resisted Officer Smith's attempt to

retrieve Farrington's cell phone.  If a jury believes Farrington, the jury could reasonably

conclude that Officer Smith's use of force was objectively unreasonable.  Based on the

above, the Court determines that Farrington has presented sufficient evidence to

overcome Officer Smith's assertions of qualified immunity and thus to survive summary

judgment.  In so holding, the Court notes that it is not concluding, as a matter of law, that

excessive force was used.  Rather, the Court concludes that, viewing the evidence in the

light most favorable to Farrington, a reasonable juror could conclude that Officer Smith's use of force against Farrington was unreasonable.[6]

### III. Failure to Supervise—Sergeant Falkowski

Farrington also contends that Sergeant Falkowski can be held individually liable under Section 1983 because, as Officer Smith's supervisor, he failed to supervise Officer Smith and tacitly authorized the use of excessive force. Specifically, Farrington asserts that Sergeant Falkowski failed to investigate Officer Smith's actions at the scene, failed to measure Farrington's blood-alcohol level, and failed to report the incident to Internal Affairs.

"A supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation." *Brockinton v. City of Sherwood, Arkansas*, 503 F.3d 667, 673 (8th Cir. 2007). The standard of liability for a failure to supervise is "deliberate indifference or tacit authorization of the offensive acts." *Id*. (citation omitted).

Evidence in the record demonstrates that Sergeant Falkowski was the watch commander on the night of the incident. Police dispatch called Sergeant Falkowski and

---

[6]     Defendants also argue that Farrington's claims against Officer Smith are barred by official immunity. Official immunity is a common-law doctrine that provides public officials with a defense to state-law tort claims. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006); *Johnson v. Morris*, 453 N.W.2d 31, 41-42 (Minn. 1990). Here, Farrington's only remaining claims are asserted under federal law. Accordingly, the

(Footnote Continued on Next Page)

told him that somebody wanted to make an assault report against the St. Paul Police Department.  (Falkowski Dep. at 22-25.)  Sergeant Falkowski spoke with Farrington on the night of the incident, called Officer Smith, told Officer Smith to write a detailed report, and advised Farrington of a phone number at which he could file a complaint with Internal Affairs.  (*Id*. at 33, 45, 56.)  The Court concludes that, based on the facts in the record, no reasonable juror could conclude that Sergeant Falkowski acted with deliberate indifference or tacitly authorized the actions of Officer Smith.  Therefore, summary judgment is granted in favor of Sergeant Falkowski and Farrington's claim against him is dismissed.

## IV.    Failure to Protect—Officers Neubrand, Storey, and Sipes

Farrington asserts that Officers Neubrand, Storey, and Sipes are liable for failure to intervene to protect Farrington from the excessive force used by Officer Smith.  In particular, Farrington asserts that Officers Neubrand, Storey, and Sipes were all on duty, on the scene, and in a position to observe what was happening to Farrington in the back of the police car.  Farrington also asserts that Officers Neubrand, Storey, and Sipes did not take action to stop Officer Smith's use of excessive force.  The individual officers assert that the record does not support Farrington's claim for failure to intervene.

An officer may be liable for failing to act to prevent the use of excessive force by another officer.  *See Nance v. Sammis,* 586 F.3d 604, 611-12 (8th Cir. 2009); *Putnam v.*

_____

(Footnote Continued From Previous Page)
doctrine of official immunity does not apply.

*Gerloff*, 639 F.2d 415, 423-24 (8th Cir. 1981).  An officer may be liable for failing to intervene to halt the unconstitutional use of force if "'(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'"  *Nance*, 586 F.3d at 612 (quoting *Floyd v. City of Detroit,* 518 F.3d 398, 406 (6th Cir. 2008)).

The Court concludes as a matter of law that the record does not support a finding that Officers Neubrand, Storey, or Sipes failed to intervene to halt the force used by Officer Smith.  First, the record establishes that Officer Neubrand was on the scene, but Farrington points to no facts in the record to show that Officer Neubrand observed the altercation between Officer Smith and Farrington.  Officer Neubrand testified during his deposition that he arrived on the scene, asked Officer Smith if he needed help, and left.  (Neubrand Dep. at 39-40.)  There is some dispute about how long Officer Neubrand was on the scene, and Farrington asserts that there is an issue of fact as to whether Officer Neubrand was there long enough to witness the incident.  However, there is no support in the record for Farrington's assertion that Officer Neubrand was in a position to intervene while the alleged excessive force took place.

Second, the record indicates that Officer Storey observed what he believed to be fighting going on in the back of the squad car.  Officer Storey then approached the car, opened the passenger car door, and assisted in handcuffing Farrington.  There is no evidence that the fighting continued after Officer Storey approached the car or that

Officer Storey delayed in approaching the car.  Accordingly, no reasonable juror could conclude that Officer Storey failed to protect Farrington.

Third, Officer Sipes observed, along with Officer Smith, that Farrington had something in his hand while seated in the back of the squad car.  (Sipes Dep. at 51-52.) She also witnessed Officer Smith open the back door to the squad car and reach for an item in Farrington's hand, followed by Officer Smith "coming down" on top of Farrington in the squad car with a shocked expression on his face.  (Sipes Dep. at 65.) She also witnessed Officer Smith strike Farrington.  (*Id*. at 73.)  Officer Sipes testified that she then approached the passenger side back door and that she or Officer Storey opened that door, and that both she and Officer Storey handcuffed Farrington.  There is no evidence that the fighting continued after Officer Sipes opened the back door or that she delayed in reacting to the altercation.  Accordingly, no reasonable juror could conclude that Officer Sipes failed to protect Farrington.

For the above reasons, the Court grants summary judgment in favor of Defendants on Farrington's failure to protect claims.

## V.    *Monell* **Claims**

It is well-established that a governmental entity cannot be held liable under § 1983 on a respondeat superior theory.  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Thus, a government body cannot be held liable under § 1983 merely because it employs a tortfeasor.  *Id*. at 691-92.  For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the

14

constitutional violation." *Id*. at 694.  An "[o]fficial policy involves a deliberate choice to follow a course of action . . . made from among various alternatives[ ] by an official who is determined by state law to have the final authority to establish governmental policy." *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quotations and brackets omitted).  Alternatively, a custom "is demonstrated by:  (1) [t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) [t]he plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation."  *Id*.  (brackets omitted).

Farrington asserts that the City of St. Paul's policy with respect to investigating civilian complaints of excessive force by a St. Paul police officer is so inadequate as to give rise to liability under *Monell*.  In particular, Farrington asserts that St. Paul's current policy requires a supervisor to contact a civilian making a complaint of excessive force to determine if the complaint is legitimate.  Farrington asserts that the City's current policy leaves too much discretion to the supervisor because a supervisor can simply deem all complaints as illegitimate.  Farrington also asserts the policy is inadequate because it does not require the supervisor to appear on the scene and to personally investigate the complaint of excessive force.  The absence of such a policy, Farrington argues,

undermined Farrington's credibility and prevented a neutral investigation.  (First Am. Compl. ¶ 39.)

The Court concludes that Farrington's *Monell* claim fails as a matter of law. Farrington has not set forth any evidence that the City's policy was the "moving force" behind the alleged excessive force violation by Officer Smith.  *Monell*, 436 U. S. at 694. Farrington has not set forth any evidence of a pattern of unconstitutional conduct, deliberate indifference to such conduct, or a custom behind the alleged unconstitutional conduct.  *Ware*, 150 F.3d at 880.  In particular, Farrington asserts that the inadequacy of St. Paul's policy on investigating excessive force complaints supports a *Monell* claim, but fails to connect the inadequate policy as the cause of a constitutional violation.  Simply, there has been no showing that any police policy caused the use of force by Officer Smith.  Therefore, summary judgment is appropriate on Farrington's *Monell* claim against the City.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.    Defendants' Motion for Summary Judgment (Doc. No. 76) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.    Defendants' Motion for Summary Judgment as to Plaintiff Brain Farrington's claims against the City of St. Paul, Officer Jason

Neubrand, Officer Nicole Sipes, Officer James Storey, Sgt. James

Falkowski, and the St. Paul City Attorney's Office is **GRANTED**.

      b.     Defendants' Motion for Summary Judgment as to Plaintiff

Brain Farrington's claim for excessive force as it is asserted against Officer

Steven Todd Smith is **DENIED**.

      c.     All claims against the City of St. Paul, Officer Jason

Neubrand, Officer Nicole Sipes, Officer James Storey, Sgt. James

Falkowski, and the St. Paul City Attorney's Office are **DISMISSED WITH**

**PREJUDICE**.

Dated:  March 8, 2011         s/Donovan W. Frank
                       DONOVAN W. FRANK
                       United States District Judge